IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MACK SIMS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| | ) |
| | ) JURY DEMANDED |
| CHARLES WICKS, a former Elkhart | ) |
| County Prosecutor, | ) |
| CITY OF ELKHART, an Indiana | ) |
| Municipality, | ) |
| JOHN FAIGH, an Elkhart Police Officer, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

The Plaintff, MACK SIMS, by and through his attorneys, Richard Dvorak, of DVORAK LAW OFFICES, LLC; Marc Barnett, of MARC BARNETT AND ASSOCIATES, and Aaron Rosenblatt, of CRIMINAL DEFENSE LAWYER OF CHICAGO, and complains against the Defendant CITY OF ELKHART, CHARLES WICKS, and JOHN FAIGH, stating as follows:

### JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983 , § 1988, the judicial code 28 U .S.C. § 1331 and § 1343( a).

2. Upon information and belief, the Defendants reside or are located within the jurisdictional limits of the Northern District of Indiana. The City of Elkhart and the

1

events described in this Complaint occurred within Elkhart County, which falls within the South Bend Division.

## THE PARTIES

3. Plaintiff Mack Sims is a resident of Indiana who was tried and convicted – and later exonerated – of attempted murder in *State of Indiana v. Sims*, Elkhart Superior Court, Case No. 20D01-9311-CF-104.

4. Defendant City of Elkhart ("Defendant City") is an Indiana municipality located in Elkhart County. Defendant City is being sued on a *Monell* theory of liability, and also is being sued based on an indemnification theory of liability for the actions of Defendant Faigh.

5. Defendant Faigh was at all times relevant to this complaint a sworn police officer of the Defendant City of Elkhart's police force, acting under color of law and in the course and scope of his employment.

6. Defendant Wicks was at all times relevant to this complaint an Elkhart County prosecutor acting under color of law and in the course and scope of his employment. The actions that give rise to this complaint were done when Defendant Wicks was acting in his investigatory role, though employed as a prosecutor.

7. The State of Indiana is an indemnifying entity for any judgments entered against Defendant Wicks, however, it is not named as a Defendant in this suit.

## FACTS

8. On or about November 2, 1993, at approximately 6 p.m., Shane Carey, a security guard at an adult education facility in Elkhart, Indiana arrived at his workplace for an evening

shift. He inspected the premises and returned to his car, which was parked in the facility's parking lot.

9. According to Carey, at approximately 7 p.m., he noticed three Black men walk behind a nearby building, and then emerge into the parking lot a few minutes later. The men approached the car and one of them shot Carey in the face causing him serious but non-fatal injuries to his jaw and cheek.

10. Carey sought assistance and emergency personnel were called. At approximately 7:30 p.m., Elkhart police officers arrived and attempted to secure the scene. In the course of doing so they spotted the Plaintiff Mack, approximately 20 feet from the victim's car.

11. The Plaintiff had done nothing wrong and had no information about the shooting. The Plaintiff was by a path that was used widely by locals.

12. The officers ordered the Plaintiff to come forward and he did so without protest.

13. There was no probable cause to believe that the Plaintiff had anything to do with the shooters, who, presumably, would have swiftly left the area rather than stand near the car for fifteen to twenty minutes, waiting for the police to arrive.

14. The Plaintiff and the surrounding area were searched but no guns were found. No shell casings or other physical evidence were ever retrieved. Although there were witnesses (apart from the victim) to the shooting, none could give a description of the shooter.

**Suggestive Identifications Orchestrated by Defendant Detective Faigh**

15. Starting on the night of the shooting and continuing for some period thereafter, Elkhart Police Detective John Faigh conducted a series of unduly suggestive identification and/or line-up procedures, thereby causing the Plaintiff to be falsely identified as the shooter of

3

Mr. Carey, and thereafter maliciously prosecuted based on this false and suggested identification.

16. Defendant Faigh would falsely testify that the victim, Carey, had identified the Plaintiff in a photo lineup on the night of the shooting. No record of that lineup exists in the police reports and Carey testified that no such line-up occurred.  This information thus was withheld from the prosecutor and the Plaintiff's defense attorney.

17. In fact, Defendant Faigh presented Carey with a single show-up photograph of Mack Sims, while Carey was in the emergency room, but not at the point where he was in fear of imminent death, immediately after the shooting. Every subsequent instance in which Carey identified Sims as the shooter was subsequently tainted by that one-person unnecessary, unduly suggestive and unreliable show-up.

18. Despite this incredibly suggestive one-person photographic show-up, upon viewing the single photograph, Carey still only indicated that the Plaintiff "looked like" one of the assailants, and still did not make a positive identification of the Plaintiff as the shooter or one of the three Black men.

19. Some time later, Faigh did present Carey with a photo array with a series of photographs. Faigh bullied and pressured Carey to make an identification of Sims.

20. Later, at trial, Carey testified as follows regarding Faigh's bullying: "[Faigh] put me under quite a bit of stress when he asked me. He was asking me a number of questions that irritated me to no end to say the least. And I don't know what he was trying to accomplish, but I was not happy."

21. None of the above bullying tactics were put in police reports, and thus this information was withheld from the prosecution and the Plaintiff's criminal defense lawyer.

22. In a subsequent lineup, Carey finally made a positive identification of the Plaintiff Mack Sims, though this identification was tainted by the previous suggestive and coercive techniques utilized by Faigh, tactics that were not tendered to the prosecution and the Plaintiff's criminal defense lawyer.

23. A final lineup was then conducted by Faigh, and this time the line-up was inconclusive in that Carey indicated that he was "thrown off" by Sims facial hair.

24. Carey's identifications, which Faigh had secured through unduly suggestive procedures, were used against the Plaintiff at his criminal trial, denying the Plaintiff the right to a fair trial.

**Unduly Suggestive Identifications conducted by Charles Wicks**

25. County Prosecutor Charles Wicks, acting in his capacity as an investigator and not as a prosecutor, also conducted an unduly suggestive line-up procedure by having Carey subjected to a session of hypnosis prior to viewing a photo array that included the Plaintiff.

26. Before trial, Carey had indicated to Wicks that he was unable to identify the shooter. In response, in order to get Carey to falsely identify the Plaintiff, Wicks suggested he be hypnotized and instructed staff in his office that the hypnosis of Carey was to be kept a secret from the Plaintiff's criminal defense lawyer.

27. The hypnosis session was conducted by George Atkins, a physician's assistant whom Wicks knew from Kiwanis Club, someone Defendant Wicks knew was unqualified to

conduct such hypnosis, although no person should have conducted such an analysis on an eyewitness in a criminal case.

28. In the hypnosis session, Carey entered a dream like state in which he was made to believe he was re-experiencing the shooting.

29. After the session, Defendant Wicks showed Carey a photo lineup in which Carey identified the Plaintiff due to a birthmark, knowing this would cause a false identification.

30. Carey later stated that only after the hypnosis did the birthmark really stand out.

31. This unduly suggestive and unreliable procedure orchestrated by Defendant Wicks caused the Plaintiff's unlawful prosecution to continue, deprived the Plaintiff of his right to a fair trial, and caused his unlawful detention to be prolonged.

32. Charles Wicks' use of hypnosis was unduly suggestive and scientifically unreliable and resulted in a fabricated memory.

33. The use of hypnosis to program Carey's memory was hidden from the Plaintiff and his defense attorneys by Defendant Wicks.

34. The Plaintiff was convicted of attempt murder, and was given a 35-year sentence.

35. Later, the Plaintiff filed a post-conviction petition, unaware of the hypnosis issue, and the case was set for an evidentiary hearing on that petition on February 8, 2012. During this hearing, the deputy prosecuting attorney assigned to the case, who was not on the original trial team, Graham Polando, on his own informed the court that Charles Wicks, now a judge and the former lead trial deputy, had instructed Polando to keep the use of hypnosis secret from the court and the Plaintiff.

36. Instead, to his credit, Mr. Polando went against Defendant Wicks desire to continue the cover-up, and first exposed Defendant Wicks' misconduct.

37. Despite this revelation, the Plaintiff's conviction was not overturned and then dismissed until sometime after the Seventh Circuit's February 1, 2019 decision to grant the Plaintiff's federal habeas corpus petition.

38. The fact that hypnosis had been used to manipulate Carey's memory was exculpatory and/or impeachment evidence which the Plaintiff's attorneys would have used to undermined the testimony of the state's sole eye-witness, had the Plaintiff's attorneys known about it at trial.

39. The hiding of this information violated the Plaintiff's right to a fair trial.

40. There was never probable cause to suspect the Plaintiff of the shooting he was only implicated after the individual Defendants conducted the suggestive identifications described above.

41. On April 26, 2019, the case against the Plaintiff was dismissed by the Elkhart Superior Court, resolving the Plaintiff's criminal case in a manner consistent with the Plaintiff's innocence.

**COUNT I**
**42 U.S.C. 1983 Due Process Claim**
**For Violation of the Plaintiff's Right to a Fair Trial**
**Plaintiff v. Defendants Faigh and Wicks**

42. The Plaintiff realleges every paragraph in this Complaint in this Count.

43. Defendants Faigh and Wicks created and/or participated in unduly suggestive identification procedures, and they did so unreasonably, willfully, wantonly, and/or intentionally.

44. Defendants Faigh and Wicks also withheld exculpatory and/or impeaching material from the Plaintiff, in violation of the Plaintiff's fair trial rights, pursuant to *Brady*.

45. Moreover, Defendants Faigh and Wicks manufactured false evidence in violation of the Plaintiff's right to a fair trial, namely the false identifications of the Plaintiff.

46. These identification procedures, withholding of such evidence and/or the manufacturing of such evidence, resulted in the tainting of the sole witness's testimony, irreparably harmed the Plaintiff's right to receive a fair trial (in violation of the Plaintiff's constitutional due process and fair trial rights), causing the Plaintiff damages including but not limited to loss of liberty, loss of income, and emotional injuries related to his wrongful imprisonment.

## COUNT II
### 42 U.S.C. 1983 *Manuel* Fourth Amendment Unlawful Detention Claim
### Plaintiff v. Defendants Faigh and Wicks

47. The Plaintiff realleges every paragraph in this Complaint in this Count.

48. Defendants Faigh and Wicks, acting willfully and wantonly, caused the Plaintiff to be detained without there existing any probable cause to believe that the Plaintiff had committed a crime. Defendants Faigh and Wicks did so in violation of the Plaintiff's rights under the Fourth Amendment.

49. The Defendants' conduct caused the Plaintiff damages including but not limited to loss of liberty, loss of income, and emotional injuries related to his wrongful prosecution and imprisonment.

## COUNT III
### 42 U.S.C. 1983 *Julian* Due Process Malicious Prosecution Claim
### Plaintiff v. Defendants Faigh and Wicks

8

50. The Plaintiff realleges every paragraph in this Complaint in this Count.

51. Defendants Faigh, and Defendant Wicks, acting willfully, wantonly and maliciously, caused the Plaintiff to be detained, prosecuted and imprisoned without there being genuine probable cause to believe that the Plaintiff had committed a crime, in violation of the Plaintiff's due process rights under the Fifth and Fourteenth amendments.

52. The Defendants' conduct caused the Plaintiff damages including but not limited to loss of liberty, loss of income, and emotional injuries related to his wrongful imprisonment.

## COUNT IV
## 42 U.S.C. 1983 – *Monell* Claim
## Plaintiff v. Defendant City of Elkhart

53. Each paragraph of this Complaint is fully restated and incorporated herein.

54. The Plaintiff had a fundamental rights under the Fourth, Fifth and Fourteenth Amendments to not be falsely detained, maliciously prosecuted and denied his right to a fair trial.

55. Defendant Faigh was at all times relevant to this complaint employed by Defendant City of Elkhart and was acting within the scope of his employment.

56. Defendant Faigh was acting under color of law at all times.

57. Additionally and/or alternatively, the City of Elkhart's actions or inactions in this case supply the requisite color of law element to this Section 1983 action.

58. The City's failure to properly supervise, train, and discipline Defendant Faigh allowed him to act with impunity and to use his police power to frame innocent persons such as the Plaintiff.

59. At all relevant times, the Defendant City of Elkhart had a custom of failing to properly train, supervise and discipline its police officers, Defendant Faigh included.

60. At all relevant times, the Defendant City of Elkhart had, in effect, policies and procedures, rules, regulations, and general orders regarding the conduct of both on and off duty officers, agents, representatives, and or employees.

61. Defendant City of Elkhart had a duty to institute and promulgate procedures, investigations and disciplinary actions that would have protected the Plaintiff, but it failed to do so.

62. Defendant City of Elkhart had a duty to institute and maintain a proper early warning system to identify problem officers but failed to do so.

63. The Defendant City of Elkhart's failure was the direct cause of Defendant Faigh's misconduct, which is elsewhere described in this complaint.

64. Defendant City of Elkhart's had a *de facto* policy and practice of allowing its police officers to frame innocent persons though unduly suggestive and identification procedures, through the withholding of *Brady* materials, and through the manufacturing of evidence, including but not limited to the use of such similar unconstitutional procedures in the case of Keith Cooper and Christopher Parish, two innocent men who were framed for a 1996 robbery through false identification procedures by one or more Defendant City officers, who did not face termination for such actions, which merely emboldened Defendant Faigh's conduct in this case.

65. Defendant City is notorious for not disciplining officers, and the officers in the Cooper and Parish case had long disciplinary histories, but Defendant Faigh's disciplinary history was even longer.

66. In fact, all or nearly all detectives and high-ranking Elkhart officers, including Defendant Faigh, had or have long disciplinary histories, yet the Chief continued to promote them anyway, again emboldening officers such as Defendant Faigh to commit the type of misconduct described in this complaint.

67. This misconduct has been going on for decades, and and, in fact, in 1994, Defendant City commissioned a report indicating that the Police Department had a systematic practice of failing to properly train, supervise, and discipline officers who commit serious misconduct.  Yet, despite the issuance of this 1994 report, no significant reforms were taken, and Defendant City's failure to adequately discipline officers such as Defendant Faigh continued, causing injury to the Plaintiff.

68. As a result of Defendant City's policies, practices, and customs, the Plaintiff suffered damages, including but not limited to those described above

### COUNT V
### Indemnification (State Law Claim)
### Plaintiff v. the City of Elkhart

69. The Plaintiff brings state-law indemnification claims against the City of Elkhart for any judgment entered against its officer Defendant Faigh.

WHEREFORE, pursuant to 42 U.S.C. § 1983 and§ 1988, Plaintiff demands compensatory damages from the Defendants, and because Defendants Faigh and Wicks acted maliciously and wantonly, substantial punitive damages against Defendants Faigh and Wicks,

plus the costs of this action, plus attorneys' fees and other and additional relief as this Court deems equitable and just.

    **THE PLAINTIFF DEMANDS A TRIAL BY JURY**

                   Respectfully Submitted
                   *s/Richard Dvorak*
                   Richard Dvorak
                   An Attorney for the Plaintiff

Richard Dvorak
DVORAK LAW OFFICES, LLC
6262 Kingery Highway, Suite 305
Willowbrook, IL 60527
630-568-3190 (p)
(312) 873-3869 (f)
richard.dvorak@civilrightsdefenders.com